Good morning. My name is Luke Piantek. I represent ESP Louisiana Opportunities LLC. I'll refer to them as ESP for short. That's a mouthful. We're here on an appeal of a jury verdict, part of a jury verdict, in a case we tried last April in the Eastern District. It's an ESP Louisiana is a mitigation banker. I'm not going to go into all the details, but essentially a mitigation banker takes degraded or eroded wetlands, builds a berm around them, infills them with dredge material, recreates and enhances the wetlands again, makes them healthy again. They plant vegetation and they take care of that in perpetuity. Why do they do that? Because it's very valuable if you can pull it off. It requires permitting, importantly by the U.S. Army Corps of Engineers, a section 404 permit, and you have to find demand for those credits. The bank will produce what's called compensatory mitigation credits, so that if a developer, such as Venture Global, goes out into the wetlands and may impact or harm some wetlands, they have to compensate for that. They want to replace what they've harmed. So they can purchase these compensatory mitigation credits that my bank, my client's bank, will produce. If they damage an acre, they buy an acre. Once they buy that acre, my client has to keep it in its natural state as an improved wetland in perpetuity. It's a very expensive proposition, but it can be very valuable because without it you can't develop. You can't build pipelines like Venture Global. So my client has an option to place a conservation servitude on a 13.89 acre track in Plaquemines Parish near the river, building two natural gas pipelines through that track to feed an LNG facility on the river. They have expropriated a servitude that's about 4.8 acres, a little over 4.8 acres. The importance of that servitude is that once the servitude is on the mitigation bank, we cannot use that acreage as mitigation credits because they can drive buggies on it, they can do inspection work on it, they can do repair work on it. We can't keep it in an improved environmental state. So one of the reasons we sought to appeal is that the jury found in ESP's favor in the first part of the jury award that the highest and best use of this property is as a mitigation bank, not as just raw wetlands that can be used for recreational purposes like hunting or fishing. But then they turn around the second part of the verdict form and award us only $12,000 for the entire almost five acres. Evidence at trial established that ESP had completed just about four out of the five steps necessary to start building the bank. You have to study it, you have to locate it first. It has to be in a good location, it has to be in a location near dredge fill like the Mississippi River. It has to be near development where they're building levees and other things that may impact wetlands. It has to be the right kind of marsh because you want to replace the kind of wetlands you damage with similar. There's brackish, there's freshwater, there's a bunch of different kinds of mitigation and marsh credits out there. The testimony at trial for our experts said that this location is the best location in the state for this type of mitigation bank. Evidence at trial showed that ESP had spent over $758,000 developing this bank as of the date of trial, including testing, core sampling, analysis by experts, drafting the draft prospectus, which is the big plan you have to file with the Army Corps of Engineers, showing what you're going to do with the property before you get the permit. And so based on all that evidence, the jury found, part one of the verdict form, that, quote, it is reasonably probable that the property will be permitted for use and used as a wetland mitigation bank in the reasonably near future. That's the touchstone finding. We pulled that language out of several cases that we cite in our brief. St. Charles Airline land is one. Coast is another. You were one on the first issue, but you've got to get your two issues on appeal. One's evidentiary and the other's the jury instruction. Right. So nobody appealed the first finding. Right. And that was the majority of the trial. Right. That's the majority of the trial, really. That was the bulk of it, because we had to explain that we could do this mitigation bank. It's a very expensive and lengthy and time consuming, difficult process, and we crossed the goal line on that. But then we got $12,000. Having spent $758,000 just to get to that point, we're not even there yet to where we can start infilling, and we get $12,000. That's about $2,400 an acre. That's reasonably, that means it's well outside of the range of reason for this value. But the jury heard both experts, and then, am I correct, you didn't file a new trial motion? We did not file a new trial motion. We're looking at this evidentiary attack for plain error only, correct? Right, right. The problem is... Is there any evidence to support that $12,000? No, no. That's got to be your argument. Right, it is. Our expert, Baldwin Justice, was accepted as a real estate appraiser. He's appraised mitigation banks. The other expert, Venture Global's expert, had not. Venture Global's expert said he's not competent to appraise a mitigation bank. What Venture Global's expert did was appraise the swamp land as swamp land that you can hunt on, fish on, but not as to be developed into mitigation bank. Maybe it seemed like a subtle distinction, but it's important. What our expert did was he did a two-step analysis of what you're supposed to do in appraisal of vacant land. He appraised it as vacant, just as raw marsh land, like Mr. Meyer did, and they came up with about the same value, $400 to $500 an acre, just as raw wetlands you can hunt on, fish on. But then Mr. Justice took it a step further. Since he has appraised mitigation banks, he looked at all kinds of issues and he testified extensively at trial about that. He looked at demand. He looked at the probability of getting a Section 404 permit. He looked at the location of the property for use as a mitigation bank. He looked at its proximity to the Mississippi River for dredge. You could pipe the dredge in inexpensively. He looked at all of those factors and said, and based upon other testimony from other experts we had, environmental experts, that said, without a doubt, this will get its 404 permit. Venture Global had an environmental expert. He testified. I mean, that is all true. That's what you would argue to the jury. But then he was cross-examined and he was asked, did you make some extraordinary assumptions? And he said, yes, absolutely. Well, it's called extraordinary. It sounds shocking. But in appraisal parlance, all that means is it's something that hasn't happened. He's appraising this as a future use. Hasn't happened, but my comparables, some of them, actually, the market demand didn't turn out so great. Some of them had big, big development costs, right? Some of the banks he looked at, sure, but they're in different parts of the state. He said the bank that was most like ours is located very near ours, that's Jesuit Bend, and they sold credits for $197,000 an acre. So he said that's the most comparable. Those kind of credits are in high demand because the court will make you get the credits in the watershed where you're doing the damage. And that's where we are. They're going to do a lot of development in that watershed. Without having filed a new trial motion, my difficulty is this could all be very convincing and you would have won had we would be affirming a high award. But you've got to show that somehow that the jury couldn't have disbelieved your expert, that the cross-examination couldn't have undermined his calculation. Because they didn't come out, if I'm correct, when you do the math, they didn't. The $2,600 per acre they came out with, that's not equivalent to Meijer's raw marshland number. That's true. That is not. That is not. So they're doing something other than just taking Meijer raw marshland. But once they determine that the highest and best use of the This gets to your jury instruction issue. Right. Well, it's the whole issue. It's the jury instruction and the inaccuracy of the award. The case law is clear under Louisiana law. And Louisiana law governs just compensation and expropriation like this. It says highest and best use of the current use of the property unless the landowner shows, you know, probable you can use it for another higher and better use in the future. That's what the jury said we proved. We will use this as a mitigation bank. And then they turn around and value it as something else. Something like raw marshland, which is a violation of the law. The law says you have to value it as a mitigation bank. And the only evidence in the record of mitigation banking values was Mr. Justice's $100,000. Venture Global itself paid the equivalent of $120,000 per acre for the same type of mitigation credits we're going to sell. And then you have Jesuit Bend, $197,000. So the $197,000, that's Jesuit Bend, right by it. My difficulty just trying to reach the trial is the closing argument, even your closing argument, justice in the amount is only the last paragraph, just two sentences. It really was barely discussed to the jury. Because it was the only evidence of value of a mitigation bank. I mean, the heavy lift was proving we could develop this property. The closing, they didn't say, oh, it's Meyer's number. It was really most debating of what's the highest and most value of this. Right. That's the key is that it is the highest and best use. And once they establish that, and they did, and that's not been appealed, you have to value it as a mitigation bank. And they valued it as something less. But it isn't a mitigation bank already. It was one that still had a probability of becoming one. You had to overcome the legal obstacle. True. You're saying the jury finding is conclusive as to that. Right. But his instruction conforms to Louisiana law that still says this is a contingency. But once they find it, then it's no longer a No, this particular one on calculating compensation. No. I mean, it quotes Louisiana. It's convoluted. We did object to one of the jury instructions. I know. But the one you're bringing to our attention, that's a plain error review, too. Right. Right. Right. Yeah. And I don't know how to get around your question. I don't know if I'm answering it. But once they do establish this is the highest and best use, there's no choice. You have to go with value at the highest and best use. You can't value it anything less than that. Right. Because that takes away our constitutional right here from opposing counsel is justice was under cross examination for a long time. He did give them a number he thought was right. But then on cross, he admitted it was going to depend on development costs. He said he discounted. They may not accept that. He said definitely depends on market demand. Don't know what it'll be. It goes up and down all over the place. So then they don't give him what he wanted. But where's the other where's the evidence of the demand? It's going to be worth next to nothing. Well, it's got to be based on evidence, though. I mean, next to nothing. What's the number? I mean, did he say it was 20,000 an acre? Do you say it was 5,000? No, go on. No, it's it was his number. And the other thing, I just you know, this area of law and I don't. So in their brief, venture global harps on and conflates really the idea of feasibility with value. They talk about how expensive it would be, how much time it would take, how complicated this is. That's all put to bed by the jury's first ruling that, yes, we would develop this as a mitigation bank. And they use that as excuses for why the verdict is so low. But once you say it's a mitigation bank, all that goes out the window. They have said it's feasible. We will meet all the all the factors of the highest and best use. Venture Global also talks about or claims that we did not put on evidence of how someone would what someone would pay for this raw acreage that could become a bank. That's wrong. Mr. Justice testified he was determining, quote, how a prudent investor would examine the subject acreage in order to determine what is the value as a mitigation bank, less the cost to develop it in order to reach that market value. So he's looking at the raw acreage. Remember, he valued it as a mitigation bank. So if a prudent investor wants to build a bank, thinks it's possible, probable, can do it, what's the value? So he is looking at the raw acreage with the potential to become a mitigation bank. I think the difference here, the dissonance between us and Venture Global is the difference between possibility and probability. Sure, possibility is not enough. Neil Meyer talked about two individuals who purchased raw wetlands with the intention of developing a bank. Well, that's a possibility. You don't get extra for possibility. If it's a probability and you do spend a lot of money and you are on the path, then it becomes much more valuable. Then it becomes different, higher, and better use. I think the best case is the state versus St. Charles airline lands. It's very similar to ours. They had some undeveloped wetlands that the owner's experts said had a value as undeveloped wetlands, like our guy, Mr. Justice, said. But they believed they could have gotten the CORE's 404 permit and developed into commercial and residential development. Now, it was raw wetlands. And the court held that just compensation is based on the fair market value of the property taken, which is its highest and best use as of the date of taking. The court went on to say that under the highest and best use doctrine, the landowner is entitled to compensation based on the potential use of the property, if it can show that more probable than not in the reasonably near future, it could develop it in that manner. So once you get the highest and best use, we're entitled to value on that basis, not some made-up basis that's lower, that's not supported by the record. The only other evidence in the record was Mr. Meyer, who was appraising raw wetlands. Well, they're not required to pick between the two numbers, are they? No. No. After considering clause examination, they can at least say your expert was inflated by some amount. But if they do that, they have to have basis for the lower amount. And they couldn't rely on Mr. Meyer, because he didn't value the property at its highest and best use. He appraised it. You agree that they don't have to accept one number or the other. Some leeway. But you're saying the leeway is so vast. It's between 100 and 197. That was their range. Anything below that is not the highest and best use, and that's against the law. They're depriving us of our due process and our just compensation. It's unconstitutional to go below that number. If they thought that Mr. Justice had inflated things or didn't take something into account, they have to have something to support a lower number. But there's nothing there. There's Mr. Meyer who didn't appraise it at the highest and best use, said he wasn't confident to do so. You can save some time for rebuttal. Yeah. I'm good. Thank you. Unless you have any questions. Good morning, Your Honors. May it please the Court. I'm Troy Charpentier, and I represent the appellee in this matter. Your Honors, I'm going to go straight to the issues raised by appellant in their brief. This Court has made it clear that its role in an appeal of a condemnation award is to determine whether the verdict was within the range of evidence presented to the jury, not to reweigh that evidence. The fact of the matter is that in this that he had located folks similar to ESP who were interested in purchasing property to develop a wetlands mitigation bank, and that he had determined that those people had paid anywhere from $200 to $1,000 an acre. That set the floor for what the jury could award. In this case, since the jury came in above that figure, this Court's role is over under its own jurisprudence. I think his argument, though, is that your expert's final remark was, I have no competence in calculating mitigation banks. And then he says, as I understand his insufficiency argument, it's three parts. One is, your expert in the end said, can't do it, the jury found just that, it's a mitigation bank. Second of all, his expert, Mr. Justice, specifically said he deducted for costs, so there's no deduction issue. And then third, his argument goes, feasibility is a red herring because the jury found that it was a mitigation bank, and therefore they had to accept his number. I don't think under the Fifth Circuit jurisprudence in a condemnation case, the jury doesn't have to accept any number. It has vast discretion to decide what compensation to award. There was extensive testimony, both on cross-examination of their expert and on cross-examination of Mr. Starkle, about the fact that this project still was very much a contingency. They didn't file even a preliminary prospectus until we took their deposition. He admitted they didn't have the money to develop it, and they were waiting on somebody like my client to step in and pay it. Those are all things that the jury could take into account, both on the issue of highest and best use and on the issue of compensation. Isn't his argument today, though, once they decide highest and best is mitigation bank, the only number they ever heard from someone who admitted to be competent in calculating was theirs? That is his argument, and I totally disagree. Under the case law, that, I don't know of any case that says that. Once the jury comes back with a number, unless he can show that it wasn't in the range of any of the evidence admitted, I know he doesn't like Mr. Meyer's number, but the jury heard that testimony. The jury had the right to consider that this Louisiana Supreme Court decisions. It says if you prove that it's reasonably likely or reasonably probable that you're going to be able to change the use of this property, it is and get a permit. Then you look at it from the standpoint of a person who, in their shoes, is going to proceed forward. You don't get the income from the thing that hasn't even, number one, they don't have the permit, number two. Do you still value it as unpermitted? Yes. Taking into account that there's a reasonable probability it will get a permit. Yes, and that is exactly what the Louisiana Supreme Court said. It is the value of the property as unpermitted. The RBA gave that language and it wasn't objected to. That is correct. It is the value of the property as unpermitted as that value would be affected by the likelihood that they get the permit. What was the evidence on the likelihood of getting the permit? Ma'am, I'm sorry? What was the evidence on the likelihood of getting the permit? There was evidence on both sides, and the jury disagreed with the evidence that I put on it. So, yes, they did find that it was likely they get the permit, but you still have to go to the case already constructed. You get to have whatever incremental increase that would come into account to a person who is interested in that development. Now, as to the jury instructions, as ESP concedes the plain error standard of review is applicable in this case, but they never show or argue that there was clear or obvious error by Judge Barbier. They complain that the coastal quality instruction, the main instruction they argue about, is incomplete, and they would have added language that they say, the language that they suggest be added goes to the highest and best use issue, not to the compensation issue. They want that on what they ask be added, or say should have been added. They also contend that the instruction is confusing and misleading. I think the best response to that is this court's statement. Few jury charges in cases of complexity will not yield error if poured over long after the fact in the quiet of the enterprise is to be allowed. It is not. Finally, they never submitted an alternate instruction that they said was more clear. Under this court's jurisprudence in Texas Beef Group versus Winfrey, that waives that issue. Finally, and I think most importantly here, ESP fails to point to any reason why not correcting this error would seriously affect the fairness, integrity, or public reputation of judicial proceedings, a finding which this court has said it must make in order to overturn a jury verdict based on an improper instruction. Finally, I'd like to address counsel's contention that the St. Charles Airlines lands case supports their position. The only issue in that case that the court was deciding was whether the owner was likely to get a permit, the one that they wanted. If you read that case carefully, the court never said anything about what approach the appraisers used in reaching the value that they came to. And that really is the crux of this case, Your Honor. The crux of this case is the jury did not believe the procedure that their expert used in valuing the property. And they found that our expert's procedure was more credible. That's the only way I can explain. Obviously, I wasn't back there. But in looking through this case, that's the only way I can explain this verdict. And the fact is, since they had that evidence under this court's control, this is the only way I can explain this. I'd like to address just quickly his point on plain-air review for jury instruction. Did you brief the fourth prong miscarriage? And if you didn't, why would we? What's your authority that we would... No, we did not brief the miscarriage. Isn't that... I mean, I sound a little fatalistic, but that sounds fatal to me. Yeah, I tend to agree. I think it would affect other expropriation cases if you'd throw away the highest-of-issue standard. I mean, I think that's pretty detrimental to all the expropriation cases out there. But I guess we did not brief that specific point, Judge. Mr. Charpentier said that Mr. Meyer talked to folks similar to ESP who wanted to develop a bank and came up with values that they paid for raw wetlands, under $1,000 per acre, I believe. Well, Mr. Meyer didn't appraise those properties. He just talked to people who bought some wetlands. That's not an appraised value. That's not something the jury can rely on. He didn't go out there and say, I'm going to appraise the value of this wetlands. He just talked to some people and they said, I paid $500 an acre. I want to develop a bank, maybe, someday in the future. But no testimony about probability, feasibility, physically possible, no testimony about demand in the area. We didn't even know where these properties were. So those people were not like ESP. They're speculators at best. But the fact is, Mr. Meyer didn't appraise those properties. He just took some purchase price and said, there's your value. That's not an appraisal. Mr. Charpentier also said that, speaking of the value issue, it is unpermitted. You could have argued that. That's pretty powerful in closing, but you didn't tell the jury that. I can't remember my entire closing argument. In the principal argument, I think in Roboto, you came back to Meyer. But in principle, I don't think there was any discussion. Again, the focus may have been on what's the highest and best value. That clearly was. And since Mr. Justice was the only one that testifies to the right one, that was the value. We were really shocked the award came out so low based on the law. With respect to looking at the property as unpermitted, as it would be affected by the likelihood of getting a permit, that's exactly what Mr. Justice did. He said, I'm looking at what a prudent investor would look at with this raw wetlands. It's 400 bucks an acre undeveloped. But if it's probable to become a mitigation bank, well, then it gets much more valuable. So that's exactly what he did. That's not what Mr. Meyer did at all. And as far as the St. Charles Airline case, the method that the appraisers used, it's either in that case or Coast Quality or Violet Dockport. They're all on the same basis. And they looked at the values of raw wetlands, and then they looked at the value of developing it into a residential subdivision, what it would cost to develop it, and what those lots could sell for based on other developments in the area. That's exactly what Mr. Justice did here. So the methods in those cases, it might not have been spelled out in St. Charles Airline, but I know it's in the other cases we talked about. They valued it as if it were developed. And that's exactly what Mr. Justice has done. And that's all I've got, unless you have any questions. Thank you, Ken. Thank you. That will conclude the arguments for today. We will resume at 9 o'clock in the morning.